UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br>    Plaintiffs/Defendants-in-Counterclaim<br><br>vs.<br><br>RICHARDSON ELECTRIC COMPANY, INC.,<br>    Defendant/Plaintiffs-in-Counterclaim<br><br>and<br><br>BANK OF NEW HAMPSHIRE,<br>    Trustee | C.A. No. 03-12477 JLA |

**MEMORANDUM IN SUPPORT OF PLAINTIFF
FUNDS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiffs Russell F. Sheehan, as he is Administrator, et al. (the "Funds") filed this action pursuant to Sections 505 and 515 of the Employee Retirement Income and Security Act, of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (a)(3) and (d)(1) and 1145, for the collection of

unpaid benefit fund contributions, interest, liquidated damages, attorneys' fees and costs. Defendant Richardson Electric Company, Inc. ("Richardson") is a company obligated to make contributions to the Funds pursuant to its collective bargaining agreement with Plaintiff/ Defendant-in-Counterclaim Local 103 of the International Brotherhood of Electrical Workers (the "Union").

Richardson has failed to pay all contributions due in accordance with the relevant collective bargaining agreement. The Funds now seek judgment for the unpaid contributions, interest, liquidated damages, attorneys' fees and costs.

## II.    STATEMENT OF UNDISPUTED FACTS

1. On or about September 1, 1993, Richardson signed a letter of assent authorizing the Boston Chapter, NECA as its collective bargaining representative for all matters contained in, or pertaining to, the then current and any subsequent collective bargaining agreements between Boston Chapter, NECA and Local Union, 103, I.B.E.W. Complaint, Exhibit A; Affidavit of Russell Sheehan ("Sheehan Aff."), par. 2.

2. Because of the letter of assent, Richardson has been a party to successive collective bargaining agreements. Sheehan Aff., par. 3.

3. Richardson was a party to the collective bargaining agreement which was effective from September 1, 2000 through August 31, 2003 ("the Agreement"). Richardson Electrical Company, Inc.'s Counterclaim ("Counterclaim"), par. 4; Complaint, Exhibit B.

4. Richardson and the Union renewed the Agreement for the period September 1, 2000 through August 31, 2003 on or about May 7, 2001, at which time Richardson agent Vaughan Richardson signed an agreement ("May 7, 2001 agreement") stating as follows:

> This Agreement shall become effective for the undersigned employer on the 1st day of September, 2000, and shall remain in

2

        effect unless and until terminated as provided in the following
        paragraph.

Sheehan Aff., par. 4. A true and accurate copy of the May 7, 2001 agreement is attached hereto as Exhibit A.

      5.      The May 7, 2001 agreement contained termination language, stating as follows:

        If the undersigned employer does NOT intend to comply with and
        be bound by all of the provisions in any subsequently approved
        agreements between Electrical Contractors Association of Greater
        Boston and Local Union 103, IBEW, he shall so notify the Local
        Union in writing at least one hundred (100) days prior to the
        termination date of the then current agreement.

      6.      Richardson president Linda Richardson sent a letter to the Union dated May 27, 2003 regarding the Agreement that was to expire on August 31, 2003, in which Ms. Richardson expressed her company's intent to negotiate the terms of the new Agreement on its own behalf. This letter was dated May 27, 2003 – 97 days before the expiration of the collective bargaining agreement which was effective from September 1, 2000 through August 31, 2003. A true and accurate copy of Linda Richardson's May 27, 2003 letter is attached hereto as Exhibit B.

      7.      As such, Richardson remains signatory to the Agreement for the subsequent contract period of September 1, 2003 through August 31, 2006. See Vaughan Richardson Deposition Transcript, p. 20, ll. 17-21, attached hereto as Exhibit C.

      8.      The Agreement, like its predecessor and successor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees no later than the fifteenth day of the month following the incurring of the obligation. The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe. Sheehan Aff., par. 5.

9.      Section 7.4 of the Agreement states that an employer who fails to make the required contributions payments to the Funds is subject to interest on the unpaid contributions and liquidated damages, along with attorneys' fees.  Sheehan Aff., par. 6.

10.     On or about March 1, 2002, Richardson notified the Union that it had entered into a contract to perform electrical services at the Lawrence Raw Sewage Treatment Plant ("Treatment Plant") project in North Andover, Massachusetts.  Counterclaim, par. 6.

11.     Richardson further notified the Union that it required Apprentices in connection with this contract.  Counterclaim, par. 6.

12.     The Union advised Richardson that it could not provide such Apprentices and that it should instead utilize Apprentices from other locals.  Richardson proceeded to utilize Apprentices from at least two other locals.  Counterclaim, par. 7.

13.     Richardson's Treatment Plant contract was for work in Local 103's territory, and thus, under the terms of the Agreement, all employees were to be paid to the Local 103 Funds at the Local 103 rates.  Sheehan Aff., par. 7; Richardson Dep. Tr., p. 29, ll. 2-23.

14.     In accordance with applicable reciprocity agreements among the various locals' benefit funds, the Local 103 Funds would remit the pension and deferred income contributions they received directly to the employees' home locals.  The health and welfare contributions they received would also be forwarded to the home locals, at the locals' contribution rate.  Sheehan Aff., par. 8.

15.     Instead, Richardson paid contributions for Apprentices on the Treatment Plant project directly to those Apprentices' home locals, at the contribution rates prescribed by those locals' collective bargaining agreements.  Sheehan Aff., par. 9; Counterclaim, par. 8.

16.     As an aggregate, the contribution rates prescribed by other New England locals are lower than those prescribed by Local 103.  Sheehan Aff., par. 10; Defendant/Plaintiff-in-Counterclaim Richardson Electrical Company Inc.'s Answers to Plaintiffs/Defendants-in-Counterclaim's First Request for Admissions ("Admissions"), Nos. 14-15, attached hereto as Exhibit D.

17.     In August, 2004, an auditor employed by Plaintiff Funds conducted an audit of Richardson's payroll books and records for the period January 2002 through December 2003 and discovered that a total of $117,370.09 in unpaid fringe benefit contributions was due the Funds.  Sheehan Aff., par. 11.

18.     Of the audit balance of $117,370.09, the amount of $34,781.30 has been resolved between the parties to date.  Thus, the total that remains in dispute is $82,588.79.  Sheehan Aff., par. 12.

19.     The remaining total of $82,588.79 comprises the contributions that were remitted to other locals for work done by Apprentices at the Treatment Plant project, in the amount of $45,989.10, plus the difference between what was paid to the other locals and what should have been paid to the Funds pursuant to the contribution rates prescribed in the Agreement, in the amount of $36,599.69.  Sheehan Aff., par. 13; Admissions, No. 13.

### III.    PROCEDURAL HISTORY

On December 9, 2003, the Plaintiffs/Defendants-in-Counterclaim filed a civil action entitled <u>I.B.E.W., Local 103 Trust Funds vs. Richardson Electric Company, Inc.</u>, C.A. No. 03-12477 JLA, in United States District Court for the District of Massachusetts.  Richardson's Answer was filed on June 23, 2004, and its Amended Answer and Counterclaim were filed on

5

January 18, 2005. The Union's Answer to Richardson's Counterclaim was filed on February 7, 2005.

## IV. ARGUMENT

### A. SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . ." Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994) (further citation omitted). "'Material' means that the fact is one that might affect the outcome of the suit under the governing law." Id., quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this case, the material facts, as set forth in the Statement of Undisputed Facts, are not in dispute. Richardson is obligated as a matter of law to pay the delinquent fringe benefit contributions that it owes through December, 2003, together with interest, liquidated damages, attorneys' fees and costs.

### B. DEFENDANT IS LIABLE FOR THE UNPAID CONTRIBUTIONS, INTEREST, AND LIQUIDATED DAMAGES.

The Funds are entitled to enforce the terms of the Agreement between Richardson and the Union, as third party beneficiaries to the Agreement, as well as the Declarations of Trust, to which Richardson is bound through the Agreement, under Section 301(a) of the LMRA, 29 U.S.C. §185(a), and Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §1132(a)(3), and § 1145. Schneider Moving and Storage Co. v. Robbins, 466 U.S. 364 (1984) (permitting multiemployer trust funds' judicial enforcement of contribution provisions in trust agreements against participating employers under

Section 301(a) of the LMRA and Section 502 of ERISA); <u>Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.</u>, 472 U.S. 559, 575 (1985) (noting that in <u>Schneider</u> it had rejected "[t]he notion that federal policy favors union enforcement of an employer's collectively bargained obligations to an employee benefit plan, to the exclusion of enforcement of the plan's trustees").

The amount to be paid to the Funds is dictated by Section 1145 of ERISA, which provides, "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." In this case, Richardson was bound by the terms of its collective bargaining agreement with the Union to make contributions to the Funds for each hour worked by covered employees no later than the fifteenth day of the month following the incurring of the obligation. Sheehan Aff., par. 5. Richardson performed work under the terms of the Agreement and failed to properly contribute to the Funds, at the rates prescribed by the Local 103 Agreement, on behalf of all of its employees. As a result, it incurred a liability to the Funds of $82,588.79 in unpaid contributions for the period January, 2002 through December, 2003. Sheehan Aff., par 13.

Section 1132 (g)(2) of ERISA provides that in any action in which judgment in favor of a plan is awarded, the Court <u>shall</u> award the plan "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and

costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.  For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 USCS §6621]."

Under the terms of Section 1132(g) and the parties' collective bargaining agreement, Richardson would owe the Funds $14,716.07 in interest on the unpaid contributions, if they had been paid by October 31, 2005.  Sheehan Aff., par 14.

Liquidated damages are also mandated by ERISA, either as set forth in the plan, in an amount not in excess of 20 percent of the contributions owed (or such higher percentage as may be permitted under Federal or state law), or in an amount equal to interest on the contributions owed, whichever is greater.  29 U.S.C. §1132 (g)(2)(C)(i) and (ii).  In the instant case, the Agreement provides for liquidated damages equal to the amount of the outstanding delinquent contributions owed as of December 1, 2004 multiplied by the percentage used to allocate net investment income to individual accounts under the Electrical Workers Deferred Income Fund for the year ending on November 30.  Sheehan Aff., par. 12.  The current percentage is 7.181 percent.  Id.  Thus, Richardson owes liquidated damages in the amount of $5,930.70.  Id.

Section 1132 (g)(2)(D) of ERISA provides a mandatory assessment of attorneys' fees "when an action is filed to enforce the employers' obligation to make payments in accordance with the terms of the plan."  Carpenters Amended and Restated Health Benefit Fund v. Ryan Construction, 767 F2d 1170, 1172 (5th Cir. 1985).  This action was filed for such a purpose and the court should therefore award the Funds their attorneys' fees of $24.172.00 and costs of $500.78.  See Affidavit of Anne R. Sills, par. 2.

C. **DEFENDANT MAY NOT ASSERT TRADITIONAL CONTRACTUAL DEFENSES IN A CLAIM FOR DELINQUENT CONTRIBUTIONS UNDER ERISA.**

Courts have interpreted Section 515 of the Employee Retirement Income Security Act ("ERISA") to stand for the proposition that employers may not assert traditional contractual defenses in a claim for delinquent contributions. 29 U.S.C. §1145; see also Central States, Southeast and Southwest Areas Pension Fund v. Transport, Inc., 183 F.3d 623, 627 (7th Cir. 1999) (under Section 515 of ERISA, employers may not assert traditional contract defenses such as "fraud in the inducement, oral promises to disregard the text"); Trustees of the ALA-Lithographic Pension Plan v. Crestwood Printing Corp., 127 F.Supp.2d 475, 479 (S.D.N.Y. 2001) (well-settled that traditional contract defenses generally not available in suits brought to collect delinquent contributions under ERISA); Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018, 1025 (6th Cir. 2001) (well-established precedent that ERISA funds accorded special status and entitled to enforce the writing, regardless of what defenses may be available under common law of contracts); Bituminous Coal Operators' Association, Inc. v. Connors, 867 F.2d 625, 632-36 (D.C. Cir. 1989) (employer may not assert mutual mistake of fact in entering the collective bargaining agreement as a defense).

Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc. held that an employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement. 870 F.2d 1148, 1154 (7th Cir. 1989). Further, according to Gerber, Section 302(c)(5)(B) of the National Labor Relations Act, like Section 515 of ERISA, prevents a court from giving force to oral understandings between a union and employer that contradict the writings.

9

Only two traditional contractual defenses have been recognized as appropriate under Section 515 of ERISA, and neither is applicable in the matter at hand. The first is that the pension contributions themselves are illegal. The second is that the Agreement is void. Benson, et al. v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2nd Cir. 1990). In the matter at hand, Richardson's knowledge that it would become signatory to a collective bargaining agreement in the normal course of hiring Union employees defeats any argument it may make that the Agreement is void. According to Benson, an employer who was not aware he was signing a collective bargaining agreement could raise the defense of the contract being void, whereas an employer who knew he was signing a collective bargaining agreement, but who was fraudulently induced to enter it, could *not* raise the defense. Id. The Court held,

> Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.

Id.

A contract is deemed void only upon fraud in the execution, where there is a misrepresentation as to the character or essential terms of a proposed contract and a party signs without knowing *or having a reasonable opportunity to know* of its character or essential terms. Trustees of the ALA-Lithographic Pension Plan, 127 F.Supp.2d at 480. In the matter at hand, Richardson knew or should have known that it would be signatory to the Agreement, and that it was charged with understanding the Agreement's character and essential terms. After all, Richardson had been a signatory employer with Local 103 dating back to 1993, and with other union locals dating back further than that. Among the terms which Richardson was charged with understanding are that employers are required to make contributions to the Funds for each hour worked by covered employees, that the Agreement specifies the amount to be contributed by an

employer to each of the Funds for each hour worked, and that all employees working in Local 103's jurisdiction are to be paid wages and fringe benefits at the rates provided in Local 103's Agreement. In the end, parties who sign a contract – or in this case, an acceptance of the Agreement and any successor agreements – have a basic responsibility to review the document before signing. See Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 34 (2nd Cir. 1997).

Richardson has alleged in its Counterclaim against the Union that a Union business agent advised Richardson to make all contributions payments on account of Apprentices retained through other locals in accordance with those other locals' collective bargaining agreements. Counterclaim, par. 7.[1] Richardson has claimed that it relied on this business agent's alleged representation in making contributions payments to other locals. However, each of Richardson's arguments in its Counterclaim – breach of contract, promissory estoppel, and indemnification – relies upon traditional contractual defenses that would not be available in an action under Section 515 of ERISA. Specifically, its breach of contract claim must fail because there was no express preservation of a claim of breach of contract in the Agreement. In Lewis v. Benedict Coal Corp., 361 U.S. 459 (1960), the Supreme Court held that a multiemployer benefit fund could enforce an employer's promise to contribute to the fund, as set forth in the collective bargaining agreement, even though the union had breached the agreement. See also Trustees of the Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc., 864 F.Supp. 342, 346 (S.D.N.Y. 1994); Flynn v. Thibodeaux Masonry, Inc., 311 F.Supp.2d 30, 43 (D.C. Cir. 2004). In Penn Plastics, the Court held, "The employer could not raise the union's breach as a defense in a suit by the multiemployer fund, where the collective bargaining agreement had not

---

[1] Richardson's listed Counterclaim Defendant is the International Brotherhood of Electrical Workers, Local 103. The Local 103 Funds are not Counterclaim Defendants.

11

preserved such a defense 'in unequivocal words.'" 864 F.Supp.2d at 346. The Agreement in the matter at hand does not preserve such a defense.

Further, public policy dictates that a collective bargaining agreement not be treated as a typical third-party beneficiary contract. In <u>Lewis</u>, the Supreme Court noted that if the employers in question were permitted to curtail payments because of a breach of contract claim against the union, "the burden will fall in the first instance upon the employees and their families across the country." 361 U.S. at 459. Further, <u>Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.</u> states that the Supreme Court's principle in <u>Lewis</u>, "that a breach by a union does not relieve the employer of its obligations to make pension contributions to a multiemployer welfare fund . . . was ratified by Congress through the enactment of section 515 of ERISA . . ." 85 F.3d 1098, 1102 (3rd Cir. 1996). <u>See also</u> 126 Cong.Rec. 23,039 (1980) (remarks by Rep. Thompson) (endorsing the reasoning of <u>Lewis</u> in passing Section 515).

Richardson's Answer states, in part, that the Union breached its contract with Richardson and therefore Richardson owes nothing to the Plaintiffs, that Plaintiffs are estopped from claiming contributions, that Plaintiffs have waived their claims, and that the Agreement was modified as to Apprentices. Again, case law is exceedingly clear that such contractual defenses may not be asserted in an ERISA claim for delinquent contributions. Further, Richardson cannot reasonably stand behind either of the two contractual defenses that have been deemed appropriate in a claim for delinquent contributions. The contributions themselves are not illegal, and Richardson's long history as a signatory employer works to discredit any defense that the

Agreement is void because Richardson was not aware it was becoming signatory to a collective bargaining agreement. Richardson's own argument that it had effectively modified the terms of the collective bargaining agreement with the Union inevitably leads to the conclusion that it was aware it was signatory to a collective bargaining agreement. Further, Richardson's breach of contract defense must fail because there was no express preservation of a claim of breach of contract in the Agreement.

As a result, Richardson must rely solely on the language of the Agreement, which states that it must make contributions to the Funds "for each hour worked by each employee, covered by the terms of [the] Agreement . . ." Complaint, Exhibit B. Simply stated, Richardson owes contributions at Local 103 rates for all employees who worked on projects within Local 103's jurisdiction for the relevant time period.

## V.   CONCLUSION

There is no dispute that Richardson owes $127,908.34 in delinquent contributions, interest, attorneys' fees, costs, and liquidated damages for work done by its employees between January, 2002 and December, 2003. Because Richardson has no viable contractual defenses to the Funds' claim for delinquent fringe benefit contributions, it must meet its obligations under the Agreement, and as such, summary judgment in favor of the Funds should enter as a matter of law on the Funds' claim against Richardson.

Respectfully submitted,

RUSSELL F. SHEEHAN, as he is
ADMINISTRATOR, ELECTRICAL
WORKERS' HEALTH AND WELFARE
FUND, LOCAL 103, I.B.E.W., et al,

By their attorneys,

/s/ Gregory A. Geiman

                Anne R. Sills, Esquire
                BBO #546576
                Gregory A. Geiman, Esquire
                BBO #655207
                Segal, Roitman & Coleman
                11 Beacon Street
                Suite #500
                Boston, MA  02108
                (617) 742-0208

Dated: November 1, 2005

### CERTIFICATE OF SERVICE

  This is to certify that a copy of the above Memorandum in Support of Plaintiff Funds' Motion for Summary Judgment has been served by first class mail upon the defendant's attorney, Alan Hoffman at Lynch, Brewer, Hoffman & Fink, LLP, 101 Federal Street, Boston, MA  02110 this 1st day of November, 2005.

                /s/ Gregory A. Geiman
                Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3013 99-254/memo-sj.doc