UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CASE NO. 03-12477 MLW

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br>　　　　　　　　　Plaintiffs<br><br>Vs.<br><br>RICHARDSON ELECTRIC COMPANY, INC.,<br>　　　　　　　　　Defendant<br><br>　　　　　　　　　and<br><br>BANK OF NEW HAMPSHIRE,<br>　　　　　　　　　Trustee | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**RICHARDSON ELECTRICAL COMPANY, INC.'S OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I.   **Introduction**

By their motion, the Plaintiff Funds contend that they are entitled to a judgment as a matter of law on their ERISA claim for unpaid contributions to union benefit funds principally with respect to certain apprentices hired by Richardson Electrical Company, Inc. ("Richardson") and assigned to a job within Local 103's territory.  In making the

argument that they are immune from all but two very narrow categories of contractual claims, the Funds ignore a line of cases, exemplified by one decided by this Court, which establishes that defenses, contractual or otherwise, may be asserted in a claim against an employer brought by a union trust fund <u>if the fund</u>, by its administrator or other agent, <u>participates in the acts which establish the defense</u>.  As will be shown below, the Funds have <u>admitted</u> that the Union Business Agent who instructed Richardson to pay apprentices' benefits to the New Hampshire local, and not to the Plaintiff Funds, was their <u>agent</u>.  Richardson submits that, in light of this admission, and because it has established the elements of the estoppel defense, it has raised genuine issues of material facts for trial.  Moreover, as will be argued below, Richardson has raised genuine issues of material fact for trial with regard to the other elements of damages sought, i.e. interest, liquidated damages and legal fees.

**II.    Statement of Material Facts In Dispute**

<u>Estoppel</u>

1.    Richardson, an electrical sub-contractor, commenced a job in North Andover, Massachusetts in 2001 involving a "pelletizer" plant.  Exhibit 1, Affidavit of Barbara J. Wade, ¶2; Exhibit 2, Deposition of Vaughan Richardson, pp. 35-36.

2.    During the course of this job, Vaughan Richardson, Richardson's representative, contacted Local 103's Business Agent, Brian Lally, and requested apprentices on the job.  Exhibit 2, Deposition of Vaughan Richardson, pp. 69-73.

3.    Lally told Vaughan Richardson that Local 103 was unable to provide apprentices to Richardson, that he should obtain them from the New Hampshire local,

Local 490, and that Richardson should pay benefits directly to the Local 490 Funds. Exhibit 2, Deposition of Vaughan Richardson, pp. 69-73.

4. In reliance on these statements, Richardson did a number of things. First, it paid benefits with respect to these apprentices/employees directly to the Local 490 Funds. Second, in order to comply with the prevailing wage law, Richardson increased the wage portion of the benefits/wage package to the apprentices so that the total package was equal to the amount which would have been paid with respect to these employees in wages and benefits had Richardson paid their benefits through Local 103. This was necessary because the Funds' benefit payments exceeded those payable to the Local 490 Funds. Exhibit 2, Deposition of Vaughan Richardson, pp. 52-54; Exhibit 1, Affidavit of Barbara J. Wade, ¶¶4-6.

5. In this regard, Richardson paid $45,989.10 in benefits directly to the Local 490 Funds with respect to the apprentices. Exhibit 1, Affidavit of Barbara J. Wade, ¶7.

6. The difference between the amount of benefits claimed by the Funds, $82,588.79, and the amount which Richardson paid to the Local 490 Funds is $36,599.69.

7. If the Court orders Richardson to pay the Funds $82,588.79, this will mean that Richardson will end up paying the apprentices in wages and benefits a package (a) well in excess of what was required for apprentices under the prevailing wage law and (b) what it would have paid <u>but for</u> Lally's instructions. Exhibit 1, Affidavit of Barbara J. Wade, ¶7.

8. Richardson's reliance on Lally's representations was reasonable. Exhibit 2, Deposition of Vaughan Richardson, pp. 74-77, 82.

9. If Richardson is required to pay the Funds all or any part of their claim with respect to the apprentices, said reliance will be to Richardson's detriment. Exhibit 1, Affidavit of Barbara J. Wade, ¶¶6-7.

Against the Funds

10. The Funds and Local 103 share a building in Boston which is owned by the Union. Exhibit 3, Deposition of Michael Monahan, pp. 26-27.

11. The Funds have six Trustees, three of whom are Local 103 members. The Trustees have the authority to control and manage the Funds. Decisions are made by majority vote. Exhibit 4, Deposition of Richard Gambino (Day One), pp. 15-16; Exhibit 5, Deposition Exhibit 7, Article IV, Sections 4.1, 4.3; Exhibit 6, Deposition Exhibit 8, Article V, Sections 5.1, 5.3.

12. Russell Sheehan, the Administrator, is a long-time former official of Local 103. Exhibit 7, Deposition of Russell F. Sheehan, pp. 5-6.

13. Richard Gambino, the Assistant Administrator of the Funds, was, at the time of Mr. Lally's statement to Vaughan Richardson, Business Manager of Local 103 - Lally's supervisor - and a Trustee of the Funds. Exhibit 4, Deposition of Richard Gambino (Day One), p. 6.

14. Lally, the Local 103 Business Agent who instructed Richardson to pay benefits to Local 490, is an agent of the Funds. Exhibit 8, Deposition Exhibit 12, Answers to Interrogatories of Russell F. Sheehan, Answer No. 5; Exhibit 7, Deposition of Russell F. Sheehan, p. 14.

<u>Interest</u>

15. The Funds interest calculation includes an amount for late payments of benefits to the Funds pertaining to journeymen who worked in June and July 2003. Exhibit 1, Affidavit of Barbara J. Wade, ¶8.

16. The interest calculation assumes receipt of said payments in December of 2004. Exhibit 1, Affidavit of Barbara J. Wade, ¶8.

17. Said payment was sent to the Funds in January of 2004, not December of 2004. Exhibit 1, Affidavit of Barbara J. Wade, ¶8.

18. Therefore, the interest calculation is inaccurate. Exhibit 1, Affidavit of Barbara J. Wade, ¶8.

<u>Legal Fees</u>

19. The claim pursuant to which summary judgment is brought is made on behalf of the Funds, <u>not</u> Local 103, which is also a plaintiff in this case. See Complaint.

20. At the depositions in this case, one lawyer from the Plaintiffs' law firm appeared for the Funds and one for the Union. Exhibit 9, Affidavit of Alan R. Hoffman, ¶4.

21. Since no evidence other than a conclusory affidavit has been offered to support the legal fees, or their reasonableness, there is no way to tell whether legal time spent on behalf of the Union is included. Exhibit 9, Affidavit of Alan R. Hoffman, ¶6.

22. No evidence has been presented justifying the amount of the legal fee or its reasonableness. Exhibit 9, Affidavit of Alan R. Hoffman, ¶7.

**III.    Argument**

   A.    Richardson Has Raised A Genuine Issue Of Material Fact With Regard To The Apprentices Issue.

In general, employers may not assert traditional contractual defenses which would be available against a union in a claim for delinquent contributions against a trust fund under Title 29 U.S.C. §1145. See, e.g., Central States, Se. and Sw. Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1151-1154 (7th Cir. 1989). In this regard, the cases cited by the Funds in their memorandum at p. 9 all involve traditional contract defenses against the Union which had entered into the collective bargaining contract providing for the payment of trust funds to third-party plan administrators. Bituminous Coal Operators' Ass'n, Inc. v. Connors, 867 F.2d 625, 634 (D.C. Cir. 1989) ("If it means nothing else, section 515 means that, at least when the Trustees are not implicated in the alleged misconduct, their suit cannot be thwarted by defenses not apparent from the face of the Agreement") (emphasis supplied). To the contrary, the present case involves contractual and quasi-contractual (estoppel) defenses based on the actions of an agent of the trust funds; and, therefore, such defenses are not barred by ERISA and the cases decided thereunder. Indeed, in the case of Massachusetts Laborers' Health and Welfare Fund v. Explosives Engineering, Inc., 136 F.R.D. 24, 27-28 (D. Mass. 1991), Magistrate Judge Collings recognized that defenses such as waiver and estoppel asserted against a fund administrator are available where the acts underlying the defense may be imputed to the fund. See also, Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co., 128 F.R.D. 96, 98 n.2 (N.D. Ill. 1989) (defendant could "raise as a defense against the Funds any of their actions which amount to laches, waiver, fraud, estoppel, misrepresentation, or accord

and satisfaction"). Thus, Richardson's claim of estoppel against the Funds is available in the present case to the extent that the conduct on which it is based may be imputed to the Funds.

In order to prove a claim of promissory estoppel under Massachusetts law, a party must establish that: "(1) the promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise does induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise." Neuhoff v. Marvin Lumber and Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (internal citation omitted).

As noted in the Statement of Material Facts in Dispute, Local 103's Business Agent Lally specifically instructed Vaughan Richardson to bring apprentices down from another union local and to pay benefits directly to that local. In reliance on that statement and its implicit representation that this procedure was appropriate, Richardson, following Lally's instructions, paid benefits directly to Local 490 and increased the wage rate of the apprentices to make up the difference between Local 490 benefits and those provided by the Funds to ensure compliance with the prevailing wage law. To the extent that the relief requested by the Funds is granted, Richardson's reliance would have been to its great detriment since it has already paid $45,989.10 in benefits with respect to the apprentices to Local 490 and it has paid the apprentices directly a wage differential which equals the difference between Local 103 benefits and Local 490 benefits.[1]

---

[1] Defendant has also raised a genuine issue of material fact for trial regarding whether Richardson's reliance was reasonable. See, Exhibit 2, Deposition of Vaughan Richardson, pp. 74-77. ("Business

7

Thus, to paraphrase Judge Collings, the issue is to what extent Lally's statements to Richardson can be imputed to the Plaintiff Funds. In this regard, Sheehan, the principal Plaintiff and Administrator of all but one of the Plaintiff Funds has admitted that Lally served as one of the "agents of the Funds during the relevant time period." Exhibit 8, Answers to Interrogatories of Russell F. Sheehan, Answer No. 5. (Moreover, Lally was the agent of Gambino, who was, at the relevant time, a Trustee of the Funds). Richardson submits that the admission on Sheehan's part raises a genuine issue of material fact with regard to the estoppel defense.[2]

    B.    <u>There Are Genuine Issues Of Material Fact Regarding The Funds' Remaining Claims for Relief</u>.

Interest

The interest claim is set forth in paragraph 14 of Sheehan's Affidavit as follows: "Richardson would owe the Funds $14,716.07 in interest on the unpaid contributions, if they had been paid by October 31, 2005." The complete lack of detail should lead to the rejection of this conclusory claim. Specifically, does the interest claim purport to include interest on late payments of contributions which are distinct from the allegedly late payments on the apprentice-related claim? Does the claim relate to interest on the apprentice-related claim only? Does it include components of both?

---

agents (like Lally) have told us to do different things with rates and benefits that I did not get an authorization from the business manager for. The authorization came from the business agent, and the Union took it just the way it was and – and – I mean, that – that has happened". <u>Id.</u>, p. 77); ("I have never had a problem with a business agent or a business manager telling me something and going back on it". <u>Id.</u>, p. 82).

[2] It should be noted that this admission is unsurprising in light of the symbiotic, closely connected relationship between Local 103 and the Funds. The Funds rent space in a building owned and occupied by the Union. The Administrator, Sheehan, and his assistant, Gambino, are long-time Union officials. The Union appoints three of the six Trustees of the Funds. Finally, there would be no payments into the Funds, which pay the salaries of Mr. Sheehan and Mr. Gambino, but for the work of the Business Manager and Business Agents in negotiating collective bargaining agreements and dealing with employers with respect to contract compliance. Exhibit 4, Deposition of Michael Monahan, pp. 6-8.

To the extent that the interest sought contains interest on <u>prior</u> late payments, the amount claimed is overstated since two Richardson checks were sent on January 15, 2004, lost by the Funds, and replaced at their request in December of 2004; and on information and belief, interest from January 15, 2004 to December of 2004 has been included.  Exhibit 1, Affidavit of Barbara J. Wade, ¶8.  To the extent that the interest claimed relates in whole or in part to the apprenticeship payments, the motion should be denied in light of the continuing viability of Richardson's estoppel defense.

Liquidated Damages

As noted in the Funds' Memorandum, liquidated damages are a percent of contributions owed.  Since any such determination must await trial, an award of any liquidated damages at this time is premature.

Attorneys Fees

Like liquidated damages, attorneys fees are recoverable only if the Funds are successful on their substantive claims.  Moreover, as set forth in the Affidavit of Alan R. Hoffman, there is an absence of proof with regard to whether the amount claimed includes fees paid to Segal, Roitman & Coleman for their representation of <u>Local 103</u>, which is not a party to the claims as to which summary judgment is sought, and also with regard to whether the fees are reasonable.  Thus, no award should be made until further discovery is conducted.  See Fed. R. Civ. P. 56(f).[3]

## **CONCLUSION**

For the reasons stated above, the Funds Motion for Summary Judgment should be denied.

---

[3] Additionally, there is no breakdown as to what fees were incurred prosecuting the apprentices claim and what fees were incurred on the interest claim.

        Richardson Electrical Company, Inc.,
        By its attorney,


        /s/ Alan R. Hoffman
        Alan R. Hoffman  BBO #236860
        LYNCH, BREWER, HOFFMAN & FINK, LLP
        101 Federal Street, 22nd Floor
        Boston, MA  02110-1800
        (617) 951-0800

Dated:  November 21, 2005

224000_1