# AGREEMENT AND DECLARATION OF TRUST

# OF THE

# LOCAL 103, I.B.E.W. HEALTH BENEFIT PLAN

**As Restated and Amended through November 30, 1996**

EXHIBIT
Gambino 7
PMR 5-23-05

# TABLE OF CONTENTS

PAGE

RECITALS

ARTICLE I
    Name of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE II
    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.1   Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.2   Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.3   Collection Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.4   Collective Bargaining Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.5   Electrical Construction Trust Funds . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.6   Eligible Dependent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.7   Employee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.8   Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2.9   ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.10  Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.11  Participant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.12  Participation Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.13  Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.14  Plan Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.15  Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.16  Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2.17  Union . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE III
    Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE IV
    Board of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4.1   Number, Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
4.2   Meetings, Quorum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
4.3   Decisions of the Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
4.4   Resolution in Event of Deadlock . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
4.5   Selection of Chairman, Secretary . . . . . . . . . . . . . . . . . . . . . . . . . . 6
4.6   Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
4.7   Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
4.8   Resignation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
4.9   Limitation of Liability of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . 7
4.10  Trustees Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TABLE OF CONTENTS

PAGE

ARTICLE V
     Powers and Duties of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5.1    Fund Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
5.2    Discretionary Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
5.3    Employer Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
5.4    Employer and Union's Obligations To Furnish Records . . . . . . . . . . . . . . . . . 9
5.5    Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
5.6    Appointment of Administrator and Co-Administrator . . . . . . . . . . . . . . . . . . 10
5.7    Sharing Expense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
5.8    Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5.9    Delegation of Investment Functions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5.10  Delegation of Ministerial Powers or Duties . . . . . . . . . . . . . . . . . . . . . . . . 11
5.11  Delegation and Allocation of Fiduciary Duties . . . . . . . . . . . . . . . . . . . . . . 11
5.12  Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.13  Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.14  Merger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.15  Settlement of Claims and Controversies . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.16  Additional Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE VI
     Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE VII
     Compliance with the Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE VIII
     Trustee May Be a Participant or Eligible Dependent . . . . . . . . . . . . . . . . . . 14

ARTICLE IX
     Employers' Obligation to Pay Contributions . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE X
     Amendment to Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARTICLE XI
     Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE XII
     Entitlement to Fund Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TABLE OF CONTENTS

PAGE

12.1    No Right, Title or Interest  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
12.2    Prohibition Against Alienation and Assignment . . . . . . . . . . . . . . . . 15
12.3    Refund of Employer Contributions  . . . . . . . . . . . . . . . . . . . . . . . . 15
12.4    Withholding Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARTICLE XIII
        Reliance by Other  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARTICLE XIV
        Massachusetts Trust  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARTICLE XV
        Gender, Title References  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARTICLE XVI
        Savings Clause  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        Signatures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# LOCAL 103, I.B.E.W. HEALTH BENEFIT PLAN

AMENDMENT and RESTATEMENT of the Agreement and Declaration of Trust of the Local 103, I.B.E.W. Health Benefit Plan, adopted by the signatory Trustees hereto and with the consent of the Local Union No. 103, I.B.E.W. and the Electrical Contractors Association of Greater Boston, Inc. on _____, 1996, effective as of December 1, 1996.

### WITNESSETH:

WHEREAS, by agreement and declaration of trust dated December 28, 1950 the Electrical Contractors Association of Greater Boston, Inc. and Local Union No. 103, I.B.E.W. established the Electrical Workers Health and Welfare Fund, Local 103, I.B.E.W. for employees and their eligible dependents employed under certain collective bargaining agreements, as amended from time to time; and

WHEREAS, said agreement and declaration of trust was amended and restated effective June 16, 1977 by the Trustees with the consent of the Electrical Contractors Association of Greater Boston, Inc. and Local Union No. 103, I.B.E.W.; and

WHEREAS, said restated trust agreement provides for the amendment thereto by the Trustees, with the consent and ratification of the Local Union No. 103, I.B.E.W. and the Electrical Contractors Association of Greater Boston, Inc.; and

WHEREAS, the Trustees desire to amend and restate said trust agreement in its entirety to incorporate in one document amendments previously adopted and to include such additional amendments as they deem prudent.

NOW THEREFORE, in consideration of the premises and mutual covenants herein contained, the undersigned Trustees agree to amend and restate said trust agreement in its entirety and declare that they will receive and hold such contributions and other money or property which may come into the Fund pursuant to the following powers and duties and for the following uses, and none other:

## ARTICLE I

## NAME OF TRUST

This Trust shall be known as the *Local 103, I.B.E.W. Health Benefit Plan.*

# ARTICLE II

## DEFINITIONS

<u>Section 2.1</u>

*Association* shall mean the Electrical Contractors Association of Greater Boston, Inc.

<u>Section 2.2</u>

*Code* shall mean the Internal Revenue Code of 1986, as amended from time to time.

<u>Section 2.3</u>

*Collection Policy* shall mean the Electrical Construction Trust Funds, Local 103, I.B.E.W. Collection Policy, as amended from time to time, which sets forth the Trustees' rules and regulations concerning collection of contributions owed by Employers to the Fund. Each Employer that contributes to the Fund shall be bound by the Collection Policy.

<u>Section 2.4</u>

*Collective Bargaining Agreement* shall mean the collectively bargained agreements between the Union and the Association, or between the Union and an Employer, which requires in part that contributions be made to the Fund for the labor of the Employees of the Employer covered by such agreement or agreements.

<u>Section 2.5</u>

*Electrical Construction Trust Funds* shall include this Fund, the Sub-trust of this Fund, namely the Electrical Workers Supplementary Health and Welfare Fund, Local 103, I.B.E.W., the Electrical Workers Pension Fund, Local 103, I.B.E.W., and the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W.

<u>Section 2.6</u>

*Eligible Dependent* shall have the same meaning as those terms have in the Plan.

<u>Section 2.7</u>

*Employee* shall mean an employee of an Employer on whose behalf the Employer is required to make contributions to the Fund under a Collective Bargaining Agreement, a Participation Agreement between an Employer and the Board of Trustees, or any other written agreement between the Employer and the Union or the Employer and the Board of

2

Trustees.

*Employee* shall also mean any of the following:

(a)     an officer or employee of the Union who receives wages or salaries from the Union, the International Union, or the AFL-CIO;

(b)     any employee of the Building and Construction Trades Council, provided they are members of the Union;

(c)     any employee of the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W.;

(d)     any employee of the Electrical Construction Trust Funds;

(e)     any employee of the Delta-Wye Credit Union;

(f)     any employee of the Local 103 I.B.E.W. Building Corporation;

(g)     any employee of the Local 103 I.B.E.W. Educational Corporation;

(h)     any employee of an employer who is a member of the Association; and

(i)     any employee of the Association;

provided the employee's employer makes contributions to the Fund at rates equivalent to those that are required to be paid under the most recent Collective Bargaining Agreements for Journeymen as determined by the Trustees in their sole discretion.

Employee shall not mean any self-employed person or sole proprietor.

Section 2.8

*Employer* shall mean any member of the Association, and any corporation, trust, or other entity which is signatory to or bound by the Collective Bargaining Agreement, a Participation Agreement or any other written agreement which requires contributions to be made to the Fund on behalf of its Employees. The Electrical Construction Trust Funds, the Union, the Joint Apprenticeship and Training Trust Fund, Local 103, I.B.E.W., the I.B.E.W. International Union, the AFL-CIO, the Building and Construction Trades Council, the Delta-Wye Credit Union, the Local 103 I.B.E.W. Building Corporation, the Local 103 I.B.E.W. Educational Corporation shall also be an Employer as to any of its Employees on behalf of whom contributions are made to the Fund.

3

*ERISA* shall mean Public Law 93-406, the Employee Retirement Income Security Act of 1974, as amended, also known as the Pension Reform Act of 1974.

Section 2.10

*Fund or Trust* shall mean the entire trust estate created or maintained pursuant to this Trust Agreement, and shall be formally called the Local 103, I.B.E.W. Health Benefit Plan. Such Fund shall include but not be limited to investments, and the income from any and all investments, employer contributions and any and all other assets, property or money received by or held by the Trustees for the uses and purposes of this Fund.

Section 2.11

*Participant* shall mean any Employee or former Employee who satisfies the eligibility requirements of the Plan for coverage.

Section 2.12

*Participation Agreement* shall mean an agreement between the Trustees and an Employer by which certain Employees of the Employer are eligible to participate in the Plan, and by which the Employer contributes to the Plan.

Section 2.13

*Plan* shall mean the Local 103, I.B.E.W. - Health Benefit Plan, as amended from time to time.

Section 2.14

*Plan Year* shall mean a 12-month period beginning December 1.

Section 2.15

*Trust Agreement* shall mean this agreement, and, if the same be amended, this agreement as amended.

Section 2.16

*Trustees* shall mean the undersigned Trustees as designated pursuant to this Trust Agreement, together with their successors designated and appointed in accordance with the terms of this Trust Agreement. The Trustees, collectively, shall be the *Board of Trustees* and shall be the "administrator" of the Plan as defined by section 3(16)(A) of ERISA.

4

Section 2.17

*Union* shall mean Local Union No. 103, International Brotherhood of Electrical Workers, AFL-CIO-CLC.

# ARTICLE III

## PURPOSE OF FUND

This Fund is created and maintained for the sole purpose of providing Participants and their Eligible Dependents with health, medical, life, vacation and such other benefits permissible in a health and welfare fund exempt from taxation pursuant to Section 501(a) of the Code as the Trustees may determine from time to time in their sole discretion, and for payment of the administration expenses incurred thereby. In no event shall any part of the principal or income of this Fund be paid to or vested in the Association, the Union or the Employers, or be used for any purpose whatsoever other than the exclusive benefit of Participants and their Eligible Dependents.

# ARTICLE IV

## BOARD OF TRUSTEES

Section 4.1: Number, Appointment

The Fund shall be administered by six Trustees, three of whom shall be appointed or elected by the Union and shall act as Union Trustees, and three of whom shall be appointed by the Association and shall act as Employer Trustees.

Section 4.2: Meetings, Quorum

Any two Trustees may call a meeting of the Trustees at any time by giving at least five (5) days written notice of the time and place thereof to each Trustee. Meetings of the Trustees may also be held at any time without notice if all the Trustees consent thereto. A quorum for the transaction of business shall consist of at least four Trustees, two of whom must be Employer Trustees and two of whom must be Union Trustees.

Section 4.3: Decisions of the Trustees

Decisions of the Trustees shall be made by the concurring vote of a majority of Trustees, provided, however, that no decision shall be made unless a minimum of two Union Trustees and two Employer Trustees cast a vote thereon, or are present to cast a vote thereon. Trustees may be represented by written proxy, provided there exists a quorum of Trustees present not counting such proxy, and provided further that such

5

proxy is signed by the Trustee giving the proxy, notarized, specifically states the extent to which the proxy may be used in voting or any other matter, and states the date of the meeting to which it applies. In voting on any question, neither the Employer Trustees, as a group, nor the Union Trustees, as a group, shall cast more votes in the aggregate than the other. If all of the Trustees, designated by the Association or by the Union as the case may be, are not present at such meeting, each side shall be entitled to cast as many votes or the same number of votes as the Trustees designated by the other side present at said meeting shall be entitled to cast, it being the intention hereof that at any meeting of the Trustees, regardless of the number present, the Trustees representing the Union and the Employer shall have equal voting power. All questions that may arise or come before the Trustees shall be determined by the affirmative vote of a majority of the Trustees. Such vote may be given in meeting assembled or by a writing signed by the Trustees, or by a majority of them, provided such writing is signed by two or more Trustees designated by the Union, and two or more Trustees designated by the Association, and such decision or act of a majority of the Trustees shall be binding and conclusive upon the parties hereto, the Board of Trustees, every Participant, and all Eligible Dependents.

## Section 4.4: Resolution In Event of Deadlock

In the event of a deadlock among the Trustees, the question shall be decided by an impartial umpire agreed upon by the Trustees or, if the Trustees cannot agree upon an impartial umpire within a reasonable length of time, either side may petition the United States District Court for the District of Massachusetts to appoint such impartial umpire.

## Section 4.5: Selection of Chairman, Secretary

During the month of June in each year, the Trustees shall select from among the Trustees a Chairman of the Trustees to serve for a term of one year commencing July 1st in each year. The Trustees may from time to time designate one of their number to act as Secretary of the Trustees and of the Fund.

## Section 4.6: Vacancies

In case of death, resignation, or inability to act of any such Trustees, the vacancy thereby created shall be filled by the group whose representation on the Board of Trustees has been affected. As soon as any Trustee, named to fill a vacancy, has accepted this trust, the trust estate shall vest in the new Trustee or Trustees, together with the continuing Trustees without any further act or conveyance. A vacancy on the Board of Trustees shall be filled within fifteen (15) days from the date of its occurrence. Any Trustee vacating such office shall forthwith turn over to the remaining Trustees at the office of the Fund any and all records, books, documents, monies or other property in his possession owned by the Fund or incident to the fulfillment of this Trust

6

Agreement and/or administration of the Fund.

Section 4.7: Removal

The Association may terminate the designation of an Employer Trustee by filing with the remaining Trustees a true copy of a resolution adopted by it terminating said designation. The Union may terminate the designation of a Union Trustee by filing with the remaining Trustees a true copy of a resolution adopted by the Union terminating said designation. Such removal shall not become effective until such time as the entity removing such Trustee has appointed a successor Trustee to take the departing Trustee's seat on the Board of Trustees, and provided further that such successor Trustee has accepted his or her trusteeship and agreed to serve under the terms and conditions of this Trust Agreement.

Section 4.8: Resignation

Any Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty days notice in writing to the remaining Trustees, or such shorter notice as the Trustees may accept as sufficient, provided a successor Trustees has been appointed to replace the departing Trustee. No resignation shall be effective prior to the successor Trustee having accepted his or her trusteeship and agreed to serve under the terms and conditions of this Trust Agreement. A copy of such resignation shall be provided to the Union and to the Association at the same time as it is provided to the Board of Trustees.

Section 4.9: Limitation of Liability of Trustees

No Trustee shall be liable or responsible for his own acts or omissions or for any acts of default of any other person or party in interest, or be liable for the acts or omissions of any other Trustee, or of any officer, agent, or servant elected or appointed by or acting for them, except as required by federal law. Each of the Trustees shall be protected in acting upon any paper or document believed by him to be genuine and to have been made, executed or delivered by the proper party purporting to have made, executed or delivered the same, and shall be protected in relying and acting upon the opinion of legal counsel in connection with any matter pertaining to the administration or execution of this Fund. All debts and obligations of the Fund shall be paid by the Fund and no Trustee shall be personally liable for such debt or obligation. To the extent permitted by law, the costs and expenses of any suit or proceeding brought against the Trustees (including legal fees) shall be paid from the Fund.

Section 4.10: Trustee's Compensation

The Trustees may authorize compensation to those Trustees who lose time and wages from work as a result of attendance at meetings and the performance of duties for

7

the Fund. The Trustees may authorize reimbursement of expenses properly and actually incurred by Trustees and Administrators in performance of their duties for the Fund. The Trustees may authorize the Trustees and Administrators to attend appropriate seminars concerning employee benefit plans, and conferences of the International Foundation of Employee Benefit Plans, as a function of their duties for the Fund. No fiduciary of the Fund who receives full time pay from an employer, or an association of employers, whose employees are participants in the Fund, or from an employee organization whose members are participants in the Fund, shall receive compensation from the Fund, except for reimbursement of expenses properly and actually incurred.

# ARTICLE V

## POWERS OF DUTIES OF TRUSTEES

Section 5.1: Fund Administration

The Trustees shall be charged with the responsibility of administering the Fund, of maintaining the proper records, of receiving payments in behalf of the Fund and depositing same, or the payment of benefits provided for in the Plan, and for expenses incurred by the Trustees and the Administrator and Co-Administrator.

Section 5.2: Discretionary Authority

The Trustees shall have complete and exclusive discretionary authority to

a)    establish a Plan of benefits;

b)    establish, adopt and amend any instruments, forms, policies or documents by which the Trust Agreement or Plan is administered or implemented;

c)    establish, adopt, amend and determine eligibility rules for benefits;

d)    Construe and interpret the terms of the Trust Agreement, Plan or any other instruments, forms, policies or documents of the Fund, including disputed or ambiguous terms and meanings, and the interpretation of the Trustees shall be binding and final on all interested persons.

No Employer, Union, Participant, Eligible Dependent, or any other person claiming through them may claim an estoppel against the Trustees or otherwise preclude them from enforcing the Trust Agreement, the Plan, or any other instrument or policy, as construed and interpreted by the Trustees in their sole discretion. No oral or written representations made by any Employer, the Union, a Fund office employee, or any Trustee, which is inconsistent with the Trust Agreement or Plan as interpreted by the

8

Board of Trustees in their sole discretion, shall be binding upon the Fund or the Board of Trustees unless specifically authorized in writing by the Board of Trustees or the Administrator.

## Section 5.3: Employer Contributions

The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Fund Administrator or Co-Administrator if one has been appointed and when directed by the Trustees, shall have the power to demand, collect and receive Employer contributions and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement. The Trustees shall be empowered to take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Fund for the purpose of collecting such payments, money and property. The Trustees shall not be bound by any grievance or arbitration procedures in any Collective Bargaining Agreement between the Association and/or any Employer and the Union.

## Section 5.4: Employer and Union's Obligations To Furnish Records

The Trustees shall have the power to require any Employer and/or the Union to furnish to the Trustees such information and reports as they may require in the performance of their duties under this Trust Agreement, and the Employer and/or the Union shall furnish the same when so required. The Trustees, or any authorized agent or representative of the Trustees, shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine and copy from the books and records of said Employers such information regarding hours worked by Employees as may be necessary to permit the Trustees to determine whether said Employers are making full payment to the Trustees of their Employer contribution.

## Section 5.5: Rules and Regulations

The Trustees shall have the power to promulgate and adopt such rules and regulations as they may deem necessary to carry out the provisions of this Trust Agreement, provided that no such rules and regulations shall be inconsistent with any of the specific provisions contained herein. All rules and regulations promulgated and adopted by the Trustees may be added to, amended or modified from time to time whenever necessary to carry out more effectively the purposes of this Trust, and all rules and regulations when adopted, and all additions, amendments or modifications thereof shall be deemed incorporated herein and shall become part hereof with the same force and effect as if herein set forth in full.

9

Section 5.6: Appointment of Administrator and Co-Administrator

The Trustees shall appoint an Administrator of this trust, who shall serve as such under the direction and supervision of the Trustees. It shall be the duty of the said Administrator to keep and maintain the books and records of the trust in good order and condition at all times; to collect, receive, and deposit the income of the trust; to pay all the necessary expenses in connection with the proper administration of the said trust and to sign checks in payment thereof; to scrutinize all applications for benefits hereunder and to see that all just claims are promptly paid, and said Administrator is hereby authorized to sign checks or drafts in payment thereof; and with the approval of the Trustees, to invest and re-invest any surplus assets; to employ such assistance and obtain such office space as may be required for the efficient handling of all trust business; and to perform such other duties as the Trustees may from time to time require. The said Administrator shall receive reasonable compensation for such services, payable in weekly installments or in such manner as agreed to by the Trustees and Administrator during the said term, and he shall also be reimbursed for all proper expenses which he may incur in the performance of his duties.

The Trustees may also appoint a Deputy Co-Administrator of this trust, who shall serve as such under the direction and supervision of the Trustees. It shall be the duty of the said Co-Administrator to work in cooperation with the Administrator in the performance of the duties hereinabove set forth. The said Co-Administrator shall receive reasonable compensation for his said services, and he shall also be reimbursed for all proper expenses which he may incur in the performance of his duties.

The Trustees may enter into such contracts with the Administrator and Co-Administrator as in their judgment shall be for the best interest of the trust.

Section 5.7: Sharing Expenses, Reciprocal Agreements

The Trustees shall have the power to associate and make agreements with the trustees of the other funds in which the Union participates on an employer-employee basis, for the purpose of establishing joint administration of the several funds, to which the several funds may share expenses. The Trustees shall have the power to make agreements, or establish an administrative fund, with such other entities to share expenses of collection of Employer contributions to the extent not prohibited by law. The Trustees shall have the power, in their sole discretion, to enter into reciprocal agreements with the trustees of other employee welfare benefit plans tax-exempt under Section 501(c)(9) of the Code by virtue of Section 501(a) of said Code which provides for the transfer of contributions of employers to or from either fund, and to promulgate such other rules, regulations and forms incident to such transfers or reciprocal agreements as are deemed advisable in their sole discretion.

10

Section 5.8: Investments

The Trustees shall have the power and authority, in their sole discretion, to invest and reinvest such funds as they may from time to time determine in such investments under applicable State and Federal law related to the investment of employee benefit funds. The Trustees may sell, exchange or otherwise dispose of such investments at any time and from time to time. The Trustees shall also have the power and authority (in addition to, and not in limitation of, common law and statutory authority) to invest in any securities, to invest in stocks, bonds, or other property, real or personal, including improved or unimproved real estate and equity interests in real estate, where such an investment appears to the Trustees, in their discretion and consistent with their fiduciary obligations, to be in the best interest of the Fund. The Trustees may invest in multiemployer property trusts or pooled investment vehicles. The Trustees shall have the authority, in respect to any stocks, bonds, or other property, real or personal, held by them as Trustees, to exercise all such rights, powers and privileges that may be lawfully exercised by any other person owning similar stocks, bonds or other property in his own right, including the voting of proxies.

Section 5.9: Delegation of Investment Functions

The Trustees shall have the power to appoint an investment manager or managers (as defined in Section 3(38) of ERISA) to manage (including the power to acquire or dispose of) any assets of the Trust as are entrusted to its or their management (or to vote proxies). No Trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the Plan which is subject to the management of such investment manager. The Trustees shall, in connection with any allocation or delegation of investment functions, adopt appropriate investment policies or guidelines.

Section 5.10: Delegation of Ministerial Powers or Duties

The Trustees may delegate any of their ministerial powers or duties to any one or more of the remaining Trustees, the Administrator, or to any neutral agent or employee engaged by the Trustees collectively.

Section 5.11: Delegation and Allocation of Fiduciary Duties

The Trustees may, by resolution or by provisions in this Trust Agreement, allocate or delegate fiduciary responsibilities to other individuals as they may deem appropriate or necessary in their sole discretion and consistent with ERISA. In the event the Trustees allocate or delegate fiduciary responsibilities, the Trustees shall not be liable for any act or omission of such person. The Trustees may terminate such allocation of delegation at any time.

11

Section 5.12:  Insurance

The Trustees may in their discretion obtain and maintain policies of insurance, to the extent permitted by law, to insure themselves, the Fund, as well as employees or agents of the Trustees and of the Fund, while engaged in business and related activities for and on behalf of the Fund (1) with respect to liability to others as a result of acts, errors, or omissions of such Trustee or Trustees, employees or agents, respectfully, and (2) with respect to injuries received or property damage suffered by them.  The cost of the premiums for such policies of insurance shall be paid out of the Fund, to the extent permitted by law.

Section 5.13:  Bonds

The Trustees shall obtain from an authorized surety company such fidelity bonds as may be required by law, covering such persons and in such amounts as the Trustees, in their discretion, may determine.  The cost of premiums for such bonds shall be paid out of the Fund.

Section 5.14:  Merger; Transfer of Assets

The Trustees shall have the power to merge with any other fund established for similar purposes as this Fund under terms and conditions agreeable to the Trustees, subject to the approval of the Union and the Association.  The Trustees shall have the power to enter into agreements with other funds established for similar purposes as this Fund concerning transfer of assets and liabilities.

Section 5.15:  Settlement of Claims and Controversies

The Trustees may in their sole discretion compromise or settle any claim or controversy in such manner as they shall determine, and any decision rendered by the Trustees to compromise or settle a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Fund.

Section 5.16:  Additional Powers

The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law,

(a)    to enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto;

12

(b)    to do or refrain from doing any act or acts which they deem necessary in the prudent operation of the Fund;

(c)    to pay out of the Fund all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund, or any money, property, or securities forming a part thereof;

(d)    to demand, collect and receive all monies legally or equitably due to the Fund, and to recover any overpayments made by the Fund to any person;

(e)    to purchase group insurance contracts to insure all or a portion of the benefits provided by the Plan;

(f)    to employ and compensate such staff as may be necessary to the administration of the Fund;

(g)    to institute and pursue any action at law or in equity;

(h)    to establish and retain, in the Trustees' sole discretion, a sufficient reserve of Fund assets to provide for the payment of ongoing or future benefits provided by the Plan;

(i)    to insure the Fund against liability or loss which may arise in the administration of the Fund or the payment of benefits under the Plan; and

(j)    to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

# ARTICLE VI

## RECORDS

Section 6.1

The Trustees shall keep accurate records of its proceedings and actions. They shall also maintain, or cause to be maintained, accounts showing the operation and condition of the Fund, and shall file such records or report of their proceedings to the extent required by applicable laws.

13

Section 6.2

The records of the Fund shall be audited annually by a certified public accountant, the report of which shall be available for examination by any party to this Trust Agreement or any Participant or Eligible Dependent of the Fund.

# ARTICLE VII

## COMPLIANCE WITH THE INTERNAL REVENUE CODE

The Trustees, in the performance of their duties hereunder, shall comply with all the applicable requirements of the Code, as from time to time enacted or amended, and with the regulations thereunder, to insure that the payments made into the Fund, either by monies due under the Collective Bargaining Agreements or other written agreements by the Employers or income derived from the investments of the corpus of the Fund, shall be entitled to continued tax-exempt status.

# ARTICLE VIII

## TRUSTEES MAY BE A PARTICIPANT OR ELIGIBLE DEPENDENT

A Trustee who qualifies as an Participant or Eligible Dependent may acquire any interest in the benefits of this Fund to the same extent as if he were not a Trustee.

# ARTICLE IX

## EMPLOYER'S OBLIGATION TO PAY CONTRIBUTIONS

The obligation undertaken by each Employer for the payment of sums to the Fund as provided for herein shall be on a parity and as valid and enforceable as is his obligation to pay wages to his Employees.

# ARTICLE X

## AMENDMENT TO TRUST AGREEMENT

This Trust Agreement may be amended at any time by an affirmative vote of the Trustees in accordance with the procedures set forth in this Trust Agreement governing Trustee voting, provided that such amendment is consented to by both the Association and the Union, and provided further that such amendments are not inconsistent with the

14

purpose of the Trust as herein set forth.

# ARTICLE XI

## TERMINATION

If, at the expiration of all Collective Bargaining Agreements between the Union and the Employers, no further provisions are made for the continuance of the Fund, and there remains surplus assets, the Trustees shall use such assets for the purpose of providing benefits to Participants and Eligible Dependents under the terms of the Plan increased by profits and decreased by administration expenses and losses which may have been incurred.

# ARTICLE XII

## ENTITLEMENT TO FUND ASSETS

### Section 12.1: No Right, Title or Interest

No Employer, Association, Union, Employee, Participant and/or Eligible Dependent, or any person claiming by or through them, shall have any right, title or interest in or to the assets of the Fund or any part thereof, except as specifically set forth in the Plan and subject to all limitations set forth therein.

### Section 12.2 Prohibition Against Alienation and Assignment

The Fund shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person other than the Trustees and their duly authorized representatives, and by such Trustees or representatives, only to the extent and for the purposes as herein specifically provided. No Employee, Participant or Eligible Dependent shall have the option to receive instead of the scheduled benefits any part of the contribution of the Employer. No Employee, Participant or Eligible Dependent shall have the right to assign, alienate or otherwise encumber the benefits to which he may be or become entitled to by reason of the Fund herein created or to receive a cash consideration in lieu of such benefits except as otherwise required by law or as may be permitted by the Trustees in their sole discretion consistent with applicable law.

### Section 12.3: Refund of Employer Contributions

Contributions made by an Employer by a mistake of fact or law (other than a mistake relating to whether the Trust is exempt from taxation under Section 501(a) of such Code) may be returned to the Employer within six (6) months after the Trustees

15

determine in their sole discretion that the contribution was made by such a mistake, reduced first by any payments made by the Fund, and further provided that no amount shall be refunded in excess of the amount of the contribution actually made, by mistake, and such refund shall be without interest or other charges. No Employer shall be entitled to credit or set-off any contributions owed to the Fund to recoup any mistaken contribution.

Section 12.4: Withholding Payment

In the event any question or dispute arises as to the proper person or persons to whom any payments shall be made under the Plan or this Trust Agreement or any other instrument, the Trustees may withhold such payment until there shall have been made as adjudication or resolution of such question or dispute which, in the Trustees' sole judgment, is satisfactory to them, or until the Trustees shall have been fully protected against loss by means of such indemnification agreement or bond as they, in their sole judgment, determine to be adequate.

## ARTICLE XIII

## RELIANCE BY OTHERS

No party dealing with the Trustees in relation to this Trust shall be obliged to see to the application of any money or property of the Trust, or to see that the terms of this Trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustees, and every instrument executed by the Trustees shall be conclusive in favor of every person relying thereon (1) that at the time of the delivery of said instrument the Trust hereby created was in full force and effect, (2) that said instrument was executed in accordance with the terms and conditions contained in this Trust Agreement and (3) that the Trustees were duly authorized and empowered to execute such instrument. The receipt given by the Trustees for any monies or other properties received by them shall effectually discharge the person or persons paying or transferring same, and such person or persons shall not be bound to see to the application, or be answerable for the loss or misapplication thereof.

## ARTICLE XIV

## MASSACHUSETTS TRUST

This Fund is created and accepted in the Commonwealth of Massachusetts, and all questions pertaining to the validity or construction of this instrument and of the acts and transactions of the parties shall be determined in accordance with the laws of the Commonwealth of Massachusetts, except as such law may be superseded by federal law.

16

# ARTICLE XV

## GENDER, TITLE REFERENCES

Whenever any words are used in this Trust Agreement in the masculine gender, they shall also be construed to include the feminine or neuter gender in all situations where they would so apply; and whenever any words are used in the singular, it shall include the plural where to do so would apply, and whenever any words are used in the plural, they shall also be construed to include the singular. The Article and Section titles are included solely for convenience and shall in no event be construed as part thereof.

# ARTICLE XVI

## SAVINGS CLAUSE

Should any provision of this Trust Agreement be held to be unlawful, or unlawful as to any person or instance, such holding shall not adversely affect the other provisions contained herein or the application of said provisions to any other person or instance, unless such illegality shall make impossible the functioning of this Fund.

IN WITNESS WHEREOF, the undesigned have caused this instrument to be executed on their behalf by their officers thereunto duly authorized this _26th_ day of _September_, 1996.

ELECTRICAL CONTRACTORS ASSOCIATION OF GREATER BOSTON, INC.

BY: _____
                            President

BY: _____
                            ~~Treasurer~~ Governor

LOCAL UNION NO. 103, I.B.E.W.

BY: _____
                            President

BY: _____
                            ~~Treasurer~~
              Financial Sect.

17

I hereby agree to act as Trustee in accordance with the foregoing Trust Agreement. I have read the foregoing instrument, fully understand the contents thereof, and agree to comply with all of its terms and provisions and to perform all of the duties therein obligated to me as Trustee.


John Dumas

William J. Ferguson

Paul J. Ward

Howard F. Lehr

Richard Gambino

Paul F. McConnell

d_healey\electric\agreements\dwb494

18